CHARLES D. SWIFT (D.C. ID No. 987353) (*admitted 12/07/2015*)
    cswift@clcma.org
CHRISTINA JUMP (TX State Bar No. 00795828) (*application to D.C. pending*)
    cjump@clcma.org
Constitutional Law Center for Muslims in America (CLCMA)
833 E. Arapaho Rd., Ste. 102
Richardson, TX 75081
Tel: (972) 914-2507; Fax: (972) 692-7454

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THASHA A. BOYD, an individual whose address is 1655 Carrie Farm Lane NW Kennesaw, GA 30144 <br><br> Plaintiff, <br><br> v. <br><br> STEVEN T. MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY, whose official address is 1111 Constitution Avenue NW District of Columbia, DC 20224 <br><br> Defendant. | CASE NO: _____ <br><br><br><br> CIVIL ACTION <br><br> **PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES** |

**PLAINTIFF'S ORIGINAL COMPLAINT AND
REQUEST FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND
DAMAGES**

## I. PRELIMINARY STATEMENTS

1. Plaintiff Thasha Boyd is a Muslim resident of Georgia. She was employed by the Internal Revenue Service ("IRS") from November 2012 to September 18, 2016. Plaintiff was subjected to religious discrimination, and, after reporting such discrimination, retaliation.

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII") for discrimination based on religion, and retaliation for engaging in protected activity.

## II. JURISDICTION AND VENUE

3. This is a civil action brought under Title VII of the Civil Rights Act of 1964; therefore, this Court has subject matter jurisdiction over this action, which is appropriately brought under 42 U.S.C. §2000e-(5)(f)(3).

4. The United States District Court for the District of Columbia is an appropriate venue under 42 U.S.C. §2000e-(5)(f)(3), because it is where Defendant has its principal office.

## III. PARTIES

5. Plaintiff Thasha Boyd is a resident of Kennesaw, Georgia. Boyd was employed as a Contact Service Representative with the IRS from November 5, 2012 to September 18, 2016. Boyd was subjected to religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Plaintiff was constructively discharged from her position with the IRS due to harassment and discrimination.

6. Defendant Steven T. Mnuchin is sued in his official capacity as Secretary of the Treasury. The Internal Revenue Service ("IRS") is a bureau of the Department of Treasury and is also a government employer. The Department of Treasury has continuously employed over 15 employees during the current and preceding calendar year.

## IV. STATEMENT OF FACTS

7. In November of 2012, Plaintiff began working for the IRS as a Contact Service Representative for the Wage & Investment, Accounts Management division of the IRS branch in Chamblee, Georgia.

8. Beginning in December of 2015, she was subjected to multiple instances of unlawful discrimination, on the basis of her religion, and in retaliation for her protected activity of opposing religious discrimination and her related EEO complaints.

9. This discrimination and harassment continued even when she was moved to another team in the same office in February of 2016. This hostile and unlawful treatment ultimately resulted in her constructive discharge in September of 2016.

10. Plaintiff sincerely practices her Islamic faith and adheres to her own beliefs, but was uncomfortable specifying her Muslim religion to her employer, for fear of discriminatory treatment. Therefore, Plaintiff described her religious beliefs to her employer as being a "non-Catholic, non-Christian" believer in God.

11. The discrimination against her began after she declined to participate in, and/or expressed discomfort with, several specifically Christmas-oriented office events which were described and presented as mandatory.

12. During a team meeting on December 3, 2015, Plaintiff's supervisors, Pamela Weems-Baker and Patricia Procope, became upset after one of Plaintiff's co-workers expressed a desire not to participate in an office-wide "Secret Santa" activity the supervisors had just described, during which each team member would be expected to hang a Christmas stocking at their cubicles.

13. In response to this, Plaintiff expressed that "Not everyone is a Christian or a Catholic, we live in a diverse world, and if someone expresses discomfort in participating in a particular event, then let it go, let it go."

14. Despite the discomfort Plaintiff and others openly expressed about required Christmas activities, Weems-Baker continued to make plans for a team "Christmas Dinner" to take place on December 22, 2015.

15. Weems-Baker also told the team that if anyone would like to pay Procope for the Christmas stockings that she purchased for everyone, they should see her, and that the Secret Santa exchange would still occur for those who were willing to participate.

16. On December 4, 2015, Plaintiff informed Weems-Baker that she put in a transfer request, and she was told to speak with the department manager Vanessa Gibson.

17. Gibson informed Plaintiff that she needed to file a written request for a transfer, with her allegations, including her belief that "whether or not we participated in certain team events that were contrary to our culture and/or religious beliefs were being used against us in our evaluations."

18. At a subsequent team meeting on December 9, 2015, it was announced that there was a mandatory holiday "cookie exchange" at the Town Hall meeting that would take place on December 17, 2015. Each team was required to design a table and either bake or purchase 10 dozen cookies.

19. Weems-Baker informed the employees that their participation in this required event would become a part of their employee evaluations ("CJEs").

20. Plaintiff was given the distinct impression by Weems-Baker and Procope that she would not be viewed as a "team player" if she chose to not participate in these holiday events.

21. On December 11, 2015, Weems-Baker demanded a list of items each employee would bring to the Christmas Dinner that the team was expected to attend later that month.

22. Plaintiff reasonably believed, based on Weems-Baker's reactions to opposition to the Secret Santa and Christmas stocking discussions, that there would be both formal and informal workplace repercussions for those who chose not to participate in these planned holiday events.

23. On December 14, 2015, Plaintiff brought in decorations for the mandatory Christmas cookie exchange, because Weems-Baker had made it clear that if Plaintiff did not adequately participate in these Christmas events it would negatively impact Plaintiff's CJE rating.

24. As a result, Plaintiff was forced to acquiesce to activities that conflicted with her clearly expressed and sincerely held religious beliefs, in an effort to avoid a negative performance review.

25. Weems-Baker asked Plaintiff about whether she planned to bring anything for the team Christmas Dinner.

26. After Plaintiff informed her that she would be bringing sodas and juice, Weems-Baker appeared visibly disappointed that, because Plaintiff was contributing, she would not be able to write her up for non-participation.

27. Shortly before December 14, 2015, Plaintiff discovered a Christmas stocking hanging on her cubicle, which she had not requested and in which she had already expressed she was unwilling to participate for religious reasons.

28. Plaintiff decided she could no longer acquiesce in activities conflicting with her expressed and sincere religious beliefs. Therefore, Plaintiff quietly exercised her right to remove the stocking from her cubicle, in accordance with her expressed and sincere religious beliefs.

29. On December 14, 2015, Weems-Baker informed Plaintiff that "witnesses" had seen her dump the Christmas stocking, which Procope had purchased for Plaintiff, into the trash, and that Plaintiff should have returned it instead of throwing it away.

30. Weems-Baker threatened to write up Plaintiff for standing by her previously expressed religious beliefs and resulting choice not to display a Christmas stocking at her cubicle.

31. Plaintiff told Weems-Baker that she did not ask Procope to purchase the Christmas stocking for her, and that if Weems-Baker wanted to write her up for removing the Christmas stocking then she needed to do so, because Plaintiff then felt she "should have filed a complaint about this long ago."

32. Plaintiff believes that following these incidents her performance was unduly scrutinized. Team leads opened up several of her closed cases in order to retroactively seek out errors for her previous work. Plaintiff believes these actions were in retaliation for her expressed discomfort with and unwillingness to participate in required Christmas activities.

33. For instance, on December 18, 2015, Weems-Baker wrote Plaintiff up for an obscure rule on one of Plaintiff's previously closed cases. Weems-Baker admitted she needed help, as a thirty-year employee, in order to identify the "mistake" made by Plaintiff, a three-year employee.

34. Weems-Baker then failed to provide Plaintiff with the proper procedure to rebut the error, despite Plaintiff's request for it and internal procedures allowing for rebuttal.

35. On December 22, 2015, the team Christmas Dinner took place, and Weems-Baker insisted on praying at the dinner. Weems-Baker insisted on this religious activity at this and any event where the team shared a meal. Weems-Baker's prayer on this date referred to "Christ Jesus our lord" and made numerous other Christian-specific references.

36. On this same day, Plaintiff contacted her EEO counselor.

37. Plaintiff filed a formal EEO complaint on February 3, 2016.

38. Plaintiff was moved to a new team at her branch on February 19, 2016.

39. Following her move and the filing of a formal EEO complaint, Plaintiff was subjected to substantial retaliatory behavior from her supervisors and several members of her team.

40. Plaintiff's work was more heavily scrutinized than it had been previously and than the work of her peers was, and on several occasions she was criticized for minute errors for which others were not criticized.

41. Additionally, Plaintiff was not giving the opportunity to rebut these errors, nor offered any constructive feedback or road to improvement, contrary to internal standard practices.

42. Although she submitted a proper request for leave for the month of June, Plaintiff's manager did not timely reply.

43. Plaintiff was later accused of taking leave for this time without calling in or following the proper procedures to obtain approval, despite her documented attempts to do so.

44. During on the job training (OJT), Plaintiff was given insufficient time for training despite her requests for more, and was subjected to higher standards than her co-workers were.

45. On May 16, 2016, Plaintiff received a performance appraisal that had been retroactively lowered from 3.4 to 3.0. She recalled that the first appraisal that she was given to sign for this review period reflected a 3.4 rating, and she signed that. Several days later, however, Plaintiff was asked to sign the evaluation a second time, which then reflected a rating that had been lowered to 3.0 without explanation.

46. Plaintiff believes that the lowered rating shows evidence of direct retaliation for her protected activity.

47. Plaintiff's work environment, employee evaluations, and the feedback that she received on her work all suffered following her refusal to participate in mandated religious activities.

48. On September 9, 2016, Plaintiff sent an e-mail to her supervisor in an attempt to bring to her attention the harassing behavior that Plaintiff was experiencing.

49. Plaintiff's supervisor was unwilling to allow her to use her worktime to address workplace complaints and harassment, and responded by informing Plaintiff that she was not permitted to send e-mails of a 'personal nature' at work and that she was further not granted administrative time for this kind of activity.

50. On September 18, 2016, due to the consistently deteriorating work conditions she faced, Plaintiff felt she had no reasonable option but to leave her position with the Department of the Treasury.

51. The final agency decision of the Department of the Treasury became final on August 17, 2017 as to IRS-16-0603 and IRS-16-0703.

52. Plaintiff received an Order of Dismissal on her complaints contained in IRS-16-0169 on October 2, 2017.

53. This suit is timely filed.

54. Plaintiff seeks redress for the discrimination, disparate treatment, constructive discharge and retaliation that she suffered as a result of expressing and abiding by her sincere religious beliefs, in violation of Title VII of the Civil Rights Act of 1964.

## V. **CLAIMS FOR RELIEF**

a. **Count I. Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

55. Paragraphs 1-54 are incorporated by reference as if fully set forth herein.

56. Plaintiff belongs to a protected class, and was subjected to discrimination on the basis of her clearly expressed, sincerely held religious beliefs.

57. The retaliation that she suffered as a result of her protected activity (refusing to participate for religious reasons, and the subsequent filing of her EEO complaints) is in direct violation of Title VII of the Civil Rights Act of 1964.

58. The IRS took adverse action against Plaintiff by requiring her to participate in multiple Christian-based activities in the workplace.

59. The IRS also took adverse action against Plaintiff when, subsequent to her expressing discomfort with these activities, it lowered her performance appraisal score without explanation, accused of her of taking leave without permission, made it difficult for Plaintiff to obtain necessary training, and subjected her work and workplace behavior to unnecessary, and sometimes retroactive, scrutiny and criticism.

60. These negative employment consequences were all a direct result of Plaintiff's religious objections to the activities described above.

61. Upon information and belief, other employees who participated in these Christmas-related activities without objection did not suffer the same adverse employment effects and were able to do their work free from the increased level of scrutiny and monitoring applied to Plaintiff.

62. The IRS has no legitimate reasons why these actions were taken against Plaintiff.

63. Prior to the outset of the discriminatory conduct, the quality of Plaintiff's work had not been called into question and she did not have any trouble working effectively in a team setting.

64. Although the IRS represented in its internal investigation that its conduct was not discriminatory and denied subjecting Plaintiff to any adverse employment action on the basis of

her religion, the reasoning offered by way of explanation in each instance is pretextual and does not adequately otherwise explain the actions taken.

65. No statements made by the IRS offer any lawful explanation for the requirement that employees participate in Christmas-oriented events or suffer repercussions, both formal and informal, for not doing so.

66. Plaintiff's work environment, evaluations and reputation suffered only after she refused to participate in activities oriented toward Christian-focused activities, which Plaintiff expressed were contrary to her own sincerely held religious beliefs.

67. Based on the foregoing, the IRS unlawfully discriminated against Plaintiff on the basis of her religion in violation of 42 U.S.C. § 2000e et. seq.

68. Plaintiff suffered damages as a result of Defendant's unlawful conduct, including a lowered performance evaluation score; hostility from her coworkers and supervisors; difficulty obtaining necessary training; unfounded accusations of taking leave without permission; consistently heightened scrutiny; and unfair and unwarranted criticism as applied to her work product.

69. As a result of these retaliatory actions, Plaintiff was constructively discharged from her position with the IRS. Although she was not formally terminated, her work environment became unreasonable and intolerable due to the actions of her supervisors and co-workers.

70. Plaintiff has satisfied all conditions precedent for bringing suit under Title VII.

**b. Count 2: Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

71. Paragraphs 1-70 are incorporated by reference as if fully set forth herein.

72. Based on the foregoing, the IRS retaliated against Plaintiff by unreasonably lowering her appraisal rating without explanation; subjecting her work and workplace behavior to

unnecessary retroactive criticism and hostility; making it difficult for her to obtain necessary training; unjustly accusing her of taking leave without adequate permission, when she had followed proper procedures; and ultimately constructively discharging her by making her work environment so hostile it became intolerable.

73. The pattern of harassment that Plaintiff was subjected to in retaliation for her protected activity resulted in unlawful constructive discharge in violation of Title VII.

74. Plaintiff's workplace conditions became intolerable when it became clear to her, through the unnecessarily critical actions of her supervisors and coworkers and her supervisor's dismissal of her attempt to bring these events to her attention via e-mail, that she would be unable to continue her work with the IRS under reasonably acceptable conditions.

75. The conditions of Plaintiff's employment were adversely affected by her employer's retaliatory actions, including a lowered appraisal score; an increasingly hostile work place, which ultimately led to her constructive discharge; and criticisms and obstacles being placed in the way of her ability to effectively do her job without interference. Each of these actions by the IRS affected Plaintiff's ability to operate within her workplace effectively and free from discrimination.

76. In retaliating against Plaintiff, the IRS acted with malice and reckless disregard for her federally protected rights.

77. Plaintiff has satisfied all conditions precedent for bringing suit under Title VII.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Thasha Boyd prays that this court enter an order:

(a) Clearing any negative references or actions from Plaintiff's disciplinary file;

(b) Enjoining the IRS from discriminating in the future on the basis of an employee's religious beliefs;

(c) Enjoining the IRS from retaliating in the future against employees who utilize their rights to oppose such discrimination;

(d) Enjoining the IRS from requiring employees to participate in religious-based activities, or activities which are known to conflict with the religious beliefs of the employees;

(e) Awarding all lost wages and other economic damages to which the Plaintiff is legally entitled;

(f) Awarding punitive damages caused by the IRS' acts of discrimination, which were taken with malice and with reckless disregard for Plaintiff's federally protected rights;

(g) Awarding Plaintiff her reasonable attorney fees and costs of this action; and

(h) Awarding such other relief as this Court deems appropriate.

Respectfully submitted this 17th day of November, 2017

                                        Respectfully submitted,

                                        ***/s/ Charles D. Swift***
                                        Charles D. Swift
                                        D.C. Bar ID 987353
                                        Christina A. Jump
                                        TX Bar No. 00795828
                                        (*application pending*)
                                        833 E. Arapaho Rd., Suite 102
                                        Richardson, TX 75081
                                        Tel: (972) 914-2507
                                        Fax: (972) 692-7454
                                        cswift@clcma.org
                                        cjump@clcma.org